[L. A. No. 9551. Department One.—January 31, 1929.]

ANNA E. MAYHEW, Respondent, v. PAUL MELBY, Defendant; HARRY F. BURKE et al., Appellants.

Otto & Linn and Roy A. Linn for Appellants.

James, Pace, Smith & Younkin for Respondent.

SEAWELL, J.—Defendants appeal from a judgment for plaintiff in a suit brought by plaintiff to quiet her title to certain real property in the city of Los Angeles. Both plaintiff and defendants claim an interest in said real property derived from the Howard Park Realty Company. On November 12, 1919, said company executed a contract of sale agreeing to convey said property to one Melby, upon receipt of full payment of the purchase price, which Melby agreed to pay in monthly installments. The defendant Harry F. Burke is the assignee of the Melby contract of sale, and defendant Frances H. Burke is his wife. Said contract of sale was placed of record on May 23, 1924, and was recorded again on July 30, 1924, after the assignment from Melby to the defendant Harry F. Burke had been placed thereon. ██ The contract was not, however, acknowledged by the Howard Park Realty Company, and, hence, the record thereof did not operate as constructive notice to plaintiff, who claims title in fee under a contract of sale executed by the company in her favor in 1920, and a deed from said company to herself dated December 11, 1924, and recorded January 9, 1925.

No deed was ever executed by the realty company to Melby or to the Burkes. On or about August 22, 1924, defendants Burke tendered to the realty company $1,250 in payment of the amount due as principal, interest and taxes on the contract of sale under which they claim. The purchase price of the lot was $1,000, of which $250 was paid at the execution of the contract. None of the monthly installments provided by said contract to be paid had ever been paid. The said contract provided that if the buyer should fail to make payments therein promised to be made, all his rights should forthwith cease, at the option of the realty company, and without notice to the buyer, and the realty company should be released from all obligations in law or equity to convey said property, or to refund any payments made, and the buyer should thereupon forfeit all right to a conveyance and to all moneys paid, which should be retained by the realty company as rent and liquidated damages, and should surrender possession of the property on demand. Plaintiff does not here claim, however, and from the evi-

dence appearing in the bill of exceptions, it cannot be said that she asserted in the court below that any rights which Melby or the Burkes may have had were forfeited and the contract of sale terminated by their failure to pay the stipulated monthly installments for a period of almost five years.

Plaintiff's contention is that she took title free and clear of any interest of defendants as a purchaser for value without notice of the rights of defendants under the prior Melby contract of sale. Since the recordation of said contract did not charge subsequent purchasers with notice of its contents, for the reason that it was not acknowledged by the realty company, and, therefore, not entitled to recordation (Civ. Code, secs. 1107, 1161, 1213, 1214, 1217; *Keese* v. *Beardsley*, 190 Cal. 465 [26 A. L. R. 1538, 213 Pac. 500]), the question here presented is whether plaintiff was a purchaser with actual notice of said contract, or with notice of circumstances sufficient to put her on inquiry as to the state of the title. "Every man who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Civ. Code, sec. 19.) Defendants contend that it appears from the testimony of plaintiff and the witness Tabor, that the latter, a neighbor of plaintiff and an employee of a title insurance company insuring titles to property in the city of Los Angeles, had told her, in the course of a neighborly conversation, that there was a "cloud" against the property. It may be conceded that statements such as those made by Tabor to plaintiff would be sufficient to put a prospective purchaser upon inquiry. It does not appear, however, as a matter of law, that Tabor's statements were made before plaintiff had paid the balance due under her contract of sale and the deed to her had been placed on record. Notice of the contract or of facts sufficient to provoke inquiry, received after recordation of the conveyance, would not, of course, affect plaintiff's rights.

Neither the testimony of plaintiff nor that of Tabor is free from uncertainties and contradictions. Plaintiff expressed an inability to remember clearly not only dates, but other details of the transaction. She did testify, however, that it

was after she received the deed that Mr. Tabor came to her home and told her that he had heard there was some trouble about the title. Plaintiff received the deed from the realty company, to which it had been returned by the recorder after being placed of record. Plaintiff further stated that the final payment of $400 on the lot was made in December, 1924, and that she learned of the Melby contract soon after "she had paid up all on the lot." Plaintiff stated in another portion of her testimony that it was in the summer of 1924 that Tabor talked with her concerning the title. This testimony would also establish the summer of 1924 as the time when the balance of $400 on the purchase price was paid, since plaintiff stated that she did not talk with him until after she paid it. It would be unusual for a delay of several months to take place before the issuance of a deed after payment of the purchase price in full and demand for a deed. The court may have considered this in reaching the conclusion here attacked and accepting the testimony that the final payment was made in December, 1924, and notice acquired after receipt of the deed.

The witness Tabor stated that the conversation with plaintiff probably occurred about March, 1924, and that he told her there was a contract of purchase on record. The Melby contract of purchase, however, was not recorded until May, 1924. In another portion of his testimony he stated that he would not want to say positively, but it was his recollection that he spoke to her about the time the assignment of the contract of sale went on record, which was in July. He also stated that it was possible several months elapsed before the particular subject of the lot came up, and that he would not fix a definite date as to when he told her. It was the function of the court below to resolve inconsistencies in the testimony and to judge of the credibility of the witnesses and of the weight of their testimony. We are of the view that plaintiff's statement to the effect that the conversation with Tabor took place after she received the deed, a circumstance that would likely fix in the mind approximately the day on which she was made aware of the Melby-Burke transaction, supports the finding upon which judgment was based, to the effect that plaintiff had no notice of the prior contract when she received her deed after recordation thereof. Other statements of plaintiff made in the course of her ex-

amination, and the testimony of Tabor, we do not deem of a sufficiently definite and convincing character to warrant us in overthrowing the finding of the trial court.

Defendants also contend that the judgment should be reversed for the refusal of the court below to admit in evidence a policy of title insurance dated January 9, 1925, and issued to plaintiff, which stated that her title was ·subject to the Melby contract. But said policy could not have been received by her until after her deed had been recorded. Said title insurance company was not the agent of plaintiff, and any knowledge it may have possessed as to the condition of the title was not imputable to plaintiff.

The judgment is affirmed.

Preston, J., and Curtis, J., concurred.