[No. A093238. First Dist., Div. Three. Aug. 9, 2001.]

In re the Marriage of JAMES and DANA CLONEY.
DANA J. GREGG, Appellant, v.
JAMES MICHAEL CLONEY, Respondent;
LLOYD A. LAUNER, Respondent.

**COUNSEL**

Christopher G. Metzger and Ezra Eli Borntrager for Appellant.

Mathews, Kluck & Walsh and Laurence A. Kluck for Respondent Lloyd A. Launer.

No appearance for Respondent James Michael Cloney.

**OPINION**

**McGUINESS, P. J.**—In this case, the trial court found that a dissolution judgment properly recorded by appellant Dana J. Gregg and duly indexed under the name of the judgment debtor, appellant's former spouse James Michael Cloney, was not constructive notice to respondent Lloyd A. Launer as the subsequent purchaser of real property from that same judgment debtor holding title to the subject property under the name "Mike Cloney," even though respondent's escrow agent acquired knowledge prior to close of escrow that James Michael Cloney and Mike Cloney were and are one and the same person. Thus, the question presented in this appeal is whether a valid judgment lien, properly recorded against a judgment debtor under one name, imparts constructive notice to a subsequent purchaser of real property from the same judgment debtor using a different name, where the purchaser's escrow agent—acting within the course and scope of her duties—gains actual knowledge of both of the names used by the seller. We conclude that it does, and that the trial court erred as a matter of law in determining otherwise. We therefore reverse the order quashing appellant's levy on the subject real property and denying her application for an order of sale thereof.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. The marriage of James Michael Cloney (hereafter Cloney) and appellant Dana J. Gregg was terminated effective September 21, 1984, by a judgment of dissolution filed on September 26, 1984. The dissolution judgment ordered Cloney to pay appellant $100 per month in child support, plus $200 per month as spousal support for a period of three years. As of September 30, 1999, the total arrearages of child and spousal support owed by Cloney to appellant, including accrued interest, amounted to $17,279.61.

At some point after his divorce from appellant, Cloney remarried. In April 1991, Cloney had title to a parcel of real property (the Property) located at 3222 High Street in the City of Eureka conveyed to himself and his new wife in joint tenancy, using the name "Mike" Cloney rather than his full name of James Michael Cloney.

On June 30, 1997, appellant recorded the dissolution judgment in the Humboldt County Recorder's Office at 1997-15460-7 of the Official Records of the County of Humboldt. The dissolution judgment was properly indexed and cross-indexed under the names of the two parties to the judgment as "James Michael Cloney" and "Dana J. Cloney."

Prior to the end of July 1999, Cloney and his second wife entered into a purchase and sale agreement to sell respondent the Property. Respondent employed First American Title Company (First American), located in Eureka, California, as his title insurance company. The parties to the purchase and sale transaction (the Transaction) also agreed to have First American act as the escrow agent for the transfer of the Property.

The escrow officer assigned to the Transaction was Stacey Holcomb. On August 5, 1999, prior to the close of escrow, Cloney went to the First American office in Fortuna to sign papers in connection with the Transaction. In connection with executing the necessary documents, Holcomb asked Cloney for his identification. Cloney produced his driver's license, identifying him as "James Michael Cloney." Holcomb, who was also a notary public, had Cloney sign her notary book to verify his signature. At Holcomb's direction, Cloney signed the book "Mike Cloney," because that was the name appearing on the title to the Property. Having examined Cloney's driver's license to verify that the picture was the same as that of the gentleman signing the escrow documents, Holcomb made a notation in her notary book that the signer was listed on his driver's license as "James Michael Cloney." On the grant deed transmitting the Property to respondent, dated July 30, 1999, Cloney also signed his name as "Mike Cloney," rather than his full name of James Michael Cloney. Holcomb did not report the discrepancy between the name on Cloney's title and the name on his driver's license, either to First American's title department or to respondent.

Escrow on the Transaction closed on August 27, 1999. On that date, First American recorded the deed transferring title in the subject Property from "Mike Cloney" and his wife to respondent. First American issued a policy of title insurance to respondent. First American's title insurance policy said nothing about appellant's judgment lien on the Property, and appellant was not paid anything on the judgment lien from the escrow.

On October 21, 1999, after appellant discovered the subject Property had been sold without her lien being paid thereon, she applied for a writ of execution. Subsequently, on February 7, 2000, appellant filed an application for an order to sell the Property pursuant to Code of Civil Procedure section 704.750.[1] In response, respondent filed a claim of exemption from enforcement of judgment, a motion to quash the levy, and a petition for an evidentiary hearing. Pursuant to the trial court's determination that there was an issue of fact as to whether respondent was a bona fide purchaser for value without notice, the matter was set for court trial.

At the hearing, Cloney identified himself under oath as "James Michael Cloney," and acknowledged he was both the judgment debtor identified as James Michael Cloney on the dissolution judgment recorded by appellant, and the person identified as "Mike Cloney" on the pertinent deeds to the Property. Cloney testified that prior to closing escrow on the Property, he showed the escrow officer his driver's license "in order to get the check"; and that the name stated on his driver's license was "James Michael Cloney." Cloney also acknowledged that, under the name of James Michael Cloney, he had previously transferred at least one other parcel of real property to his second wife, who had then retransferred the property jointly to herself and Cloney under the name of "Mike" Cloney.

In her testimony, Holcomb testified she performed her duties as a notary public at the offices of First American while employed there; her notary book was provided to her by First American; and she was not paid separately by First American for her duties as a notary public as distinguished from her employment with First American. Asked whether respondent had the right to see the portions of her notary book pertaining to the Transaction, Holcomb opined that he did not. She stated her belief that her "notary journal is confidential," and she "would not show it to anybody." Holcomb testified she was not familiar with the provisions of Government Code section 8206, subdivision (c).[2]

Respondent testified that he relied on his title company, First American, to search the county records to determine if there were any liens or encumbrances upon the Property. Prior to the close of escrow, no one informed him that James Michael Cloney and "Mike" Cloney were the same person, although he was aware that "Mike" is a common nickname for Michael.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2] Government Code section 8206, subdivision (c) provides: "Upon written request of any member of the public, which request shall include the name of the parties, the type of document, and the month and year in which notarized, the notary shall supply a photostatic copy of the line item representing the requested transaction at a cost of not more than thirty cents ($0.30) per page."

James Cammack, manager of title operations at Humboldt Land Title Company for 13 years, was called by appellant as an expert witness on title insurance matters. Cammack testified that whenever there is a question about whether a judgment applies to a given seller, or about the seller's full legal name, the standards of the industry require that inquiry be made of the seller as to his or her identity.

Will Harley, an underwriter for First American, was called as an expert witness by respondent. Harley testified to his opinion that a reasonable title company following the standards of the industry would not search recorded judgments to locate middle names matching nicknames or other names given by real property sellers; and thus would not pick up a judgment against "James Michael Cloney" as a lien on real property held by the same person under the name "Mike Cloney." Under cross-examination, Harley acknowledged that if he learned either as escrow agent or as title officer that the name under which someone held title to property was not the same as that person's "actual legal name," he would notify the title examiner of that fact. In addition, Harley testified it was "becoming" the standard of the industry "to get a statement of identity up front" from a seller prior to closing of escrow; and when a statement of identity reveals a difference in the name of the person, that information "should be" passed on to the title department for it to use in checking title.

At the conclusion of trial and after argument from counsel, the trial court asked for further briefing on the question of a title company's duties to search names similar or related to those of the property owner, and whether the knowledge of a title company about a seller's alternative names could be imputed to its insured. The trial court then took the matter under submission. Both parties formally requested a statement of decision pursuant to section 632.

On August 31, 2000, the trial court issued a memorandum of tentative decision on respondent's motion to quash. The trial court found First American "had no duty to search the records for anything other than 'Mike' or 'Michael' as a first name," and requiring a search for those names as *middle* names "would impose an unreasonable burden on the title industry." Further, the trial court stated it "does not believe" the knowledge of escrow officer Holcomb about Cloney's real name, obtained in her position as a notary public, could be imputed to the title officer. However, the trial court did not address the question whether Holcomb's knowledge of Cloney's actual full name could be imputed to respondent. The trial court granted respondent's motion to quash and denied appellant's application for sale of the Property to satisfy her judgment lien. On September 18, 2000, the trial court issued an order quashing the levy, denying the application for order of sale, and

granting respondent costs.[3] The court did not issue any other formal statement of decision. This appeal timely followed.

## DISCUSSION

Appellant argues that as of June 30, 1997, the date her dissolution judgment was recorded, she had a valid lien on all property owned by her former husband, including the subject Property; and the trial court erred in denying her application for sale of the Property and quashing her levy thereon, because respondent took his title subject to her lien. Respondent counters that he had neither actual nor constructive notice of the judgment lien against "Mike" Cloney, and cannot be charged with any knowledge about the identity of "Mike" and "James Michael" Cloney which came to the attention of his escrow agent. For the reasons which follow, we conclude a purchaser of real property must be charged with constructive notice of a valid judgment lien recorded against the seller, where the purchaser's escrow agent obtains actual notice the seller has used more than one name, and the name of the seller appearing on the instruments of title is different than that appearing on the seller's identification.

■ The central issue on this appeal is whether respondent may be charged with notice of appellant's judgment lien against Cloney and his assets. This is a mixed question of law and fact. Because the facts in this case are undisputed, this appeal is subject to review de novo as to the legal effect of the escrow officer's knowledge that James Michael Cloney and Mike Cloney are one and the same person, and the issue whether as purchaser of the Property from the latter, respondent had constructive notice of the lien created by the recorded judgment against the former. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612 [38 Cal.Rptr.2d 150, 888 P.2d 1279].)

By statute, notice may be actual or constructive. Actual notice is defined as "express information of a fact," while constructive notice is that "which is imputed by law." (Civ. Code, § 18.) ■ "A person generally has 'notice'

---

[3]The language of the trial court's order paralleled that of its earlier memorandum ruling. Specifically, the trial court stated in pertinent part as follows: "Lloyd Launer and his title company had no duty to search the records for judgment liens when Lloyd Launer purchased his property from Mike and Marsha Cloney for anything other than 'Mike' or 'Michael' as a first name. The court finds that if it imposed a duty to search for these names as middle names, it would impose an unreasonable burden on the title industry. Further, the court does not believe that the knowledge of the escrow officer, obtained in her position as a Notary Public, can be imputed to the title officer. [¶] Respondent Dana J. Cloney's application for sale of a dwelling house is denied and the motion of Lloyd Launer, real party in interest to quash levy on his residence is granted. Lloyd Launer, as real party in interest, responding to the application for sale of his dwelling house is a prevailing party and entitled to costs of suit."

of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact." (*First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443 [71 Cal.Rptr.2d 295]; Civ. Code, § 19; 5 Miller & Starr, Cal. Real Estate (3d ed. 2000) Recording and Priorities, §§ 11:49 to 11:51, 11:58 to 11:59, pp. 129-138, 147-151.)[4] It is "black-letter law" that a bona fide purchaser for value who acquires his or her interest in real property without knowledge or notice of another's prior rights or interest in the property takes the property free of such unknown interests. On the other hand, as respondent necessarily acknowledges, it is an equally well-established principle of law that any purchaser of real property acquires the property subject to prior interests of which he or she has actual *or constructive* notice. (*Stout v. Gill* (1930) 110 Cal.App. 445, 449 [294 P. 446]; *Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451-452 [268 Cal.Rptr. 202]; 5 Miller & Starr, Cal. Real Estate, *supra,* Recording and Priorities, §§ 11:49 to 11:51, pp. 129-138.)

■ Every duly recorded conveyance of real property, or recorded judgment affecting title to or possession of real property, is constructive notice of the contents thereof to subsequent purchasers and mortgagees from the time of recordation. By the same token, any conveyance of real property is void as against any prior recorded judgment affecting the title. (*Hochstein v. Romero, supra,* 219 Cal.App.3d at pp. 451-452 ["a recorded document imparts constructive notice to subsequent purchasers and precludes them from acquiring the property as bona fide purchasers without notice, because the law conclusively presumes that a party acquiring property has notice of the contents of a properly recorded document affecting such property"]; Civ. Code, §§ 1213-1214; Gov. Code, § 27282, subds. (a)(1), (b).)[5] Under section 697.320, subdivision (a)(1), the recording of a certified copy of a judgment

---

[4]Civil Code section 19 provides as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

[5]Civil Code section 1213 provides in pertinent part: "Every conveyance of real property or an estate for years therein acknowledged or proved and certified *and recorded as prescribed by law* from the time it is filed with the recorder for record *is constructive notice of the contents thereof to subsequent purchasers and mortgagees . . . .*" (Italics added.)

Civil Code section 1214 provides: "Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is *void* as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and *as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.*" (Italics added.)

Government Code section 27282 provides in pertinent part: "(a) The following documents may be recorded without acknowledgment, certificate of acknowledgement, or further proof: [¶] (1) A judgment affecting the title to or possession of real property, authenticated by the certificate of the clerk of the court in which the judgment was rendered. [¶] . . . [¶] (b) *Any*

for child or spousal support creates a judgment lien on all real property owned by the judgment debtor in the county of the recording.[6] Any purchaser of property subject to a lien created pursuant to Code of Civil Procedure section 697.320 takes title subject to that lien in the amount of the lien at the time of transfer plus interest accruing thereafter, enforceable through levy and sheriff's sale. (Code Civ. Proc., §§ 697.390, subd. (b), 699.710, 700.015.)[7]

It is undisputed that respondent did not have *actual* knowledge "Mike" and James Michael Cloney are one and the same individual. It is equally undisputed that Holcomb, respondent's escrow agent and an employee of respondent's title insurance company, did obtain actual knowledge of that fact when she asked for identification from "Mike" Cloney and received information identifying him as James Michael Cloney. ■ The issue is whether the escrow agent's actual knowledge of this fact may be imputed to respondent. To the extent it may, by law he necessarily also had *constructive* notice of the judgment lien recorded against James Michael Cloney, and that the person from whom he was purchasing the subject Property was a judgment debtor under appellant's recorded dissolution judgment. (Code Civ. Proc., §§ 697.320, subd. (a)(1), 697.390, subd. (b); Civ. Code, §§ 1213-1214; Gov. Code, § 27282, subds. (a)(1), (b); *Hochstein v. Romero, supra,* 219 Cal.App.3d at pp. 451-452.)

The parties spend a considerable amount of effort arguing such issues as whether a title company must search for recorded judgments and liens using the seller's known name as both a first and a middle name; the extent of a title insurer's duty of care to the insured real property purchaser; and whether or not knowledge gained by a title insurance company can be imputed to its insured. Under the factual and procedural circumstances of this case, these are not constructive avenues of analysis. ■ It is a "well-settled rule . . . that a title insurance company is not the agent of its

---

*document described in this section, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees."* (Italics added.)

[6]Section 697.320 provides in pertinent part as follows: "(a) A judgment lien on real property is created under this section by recording . . . a certified copy of . . . the following money judgment[] with the county recorder: [¶] (1) A judgment for child, family, or spousal support payable in installments. [¶] . . . [¶] (b) Unless the money judgment is satisfied or the judgment lien is released, a judgment lien created under paragraph (1) of subdivision (a) . . . continues during the period the judgment remains enforceable. . . ."

[7]Section 697.390 provides in pertinent part as follows: "If an interest in real property that is subject to a judgment lien is transferred or encumbered without satisfying or extinguishing the judgment lien: [¶] . . . [¶] (b) The interest transferred or encumbered remains subject to a judgment lien created pursuant to Section 697.320 in the amount of the lien at the time of transfer or encumbrance plus interest thereafter accruing on such amount."

insured, and the insurer's knowledge is not imputed to its insured. (*Mayhew v. Burke* (1929) 206 Cal. 396, 400 [274 P. 517].)" (*Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1856, 1868-1870 [37 Cal.Rptr.2d 63].)[8] Thus, whatever knowledge First American had about Cloney's identity and the state of his title as a matter of actual or constructive notice, or which it arguably *should* have had as a matter of its duties as a title insurer, is essentially irrelevant to this case, for the simple reason that a title insurer's knowledge cannot be imputed to its insured. (*Ibid.*; see *Rice v. Taylor* (1934) 220 Cal. 629, 633-636 [32 P.2d 381]; *Mayhew v. Burke, supra,* 206 Cal. at p. 400.)

The question whether an escrow agent's knowledge may be imputed to the purchaser of real property, however, is an entirely different matter. As a general rule, an agent has a duty to disclose material matters to his or her principal, and the actual knowledge of the agent is imputed to the principal. (Civ. Code, § 2332.)[9] "It is . . . well-settled law in this state that notice given to or possessed by an agent within the scope of his employment and in connection with and during his agency, is notice to the principal. [Citations.] . . . 'The general rule is well settled that the knowledge of the agent in the course of his [or her] agency is the knowledge of the principal. [Citation.] It rests on the assumption that the agent will communicate to his [or her] principal all information acquired in the course of his [or her] agency, and when the knowledge of the agent is ascertained the constructive notice to the principal is conclusive. [Citation.]' " (*Early v. Owens* (1930) 109 Cal.App. 489, 494 [293 P. 136]; see also *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 534-535 [81 Cal.Rptr.2d 669]. ["The basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty."].)

---

[8] " 'The insured and the insurer deal at arm's length. There is no room for the operation of a fiduciary relationship. The title company is in business for profit. It may be willing to assume risks that the insured might think imprudent.' [Citation.] [¶] . . . As a matter of express statutory law, a title company issuing a preliminary report does not owe a negligence duty to a prospective insured. (Ins. Code, §§ 12340.10, 12340.11; see generally, *Southland Title Corp.* v. *Superior Court* (1991) 231 Cal.App.3d 530, 536-538 [282 Cal.Rptr. 425] [no negligence liability based on preliminary report].) [The title insurer] was simply selling a product. Imputing its knowledge to [purchasers of real property] would be like imputing a car salesperson's knowledge of defective brakes to an unsuspecting buyer, and then using that imputed knowledge to subject the buyer to liability for reckless conduct for driving a car with actual knowledge that its brakes didn't work. Such a conclusion would be contrary to law, as well as to the most basic notions of fair play. It is no more appropriate here." (*Lewis v. Superior Court, supra,* 30 Cal.App.4th at pp. 1869-1870, fn. omitted.)

[9] Civil Code section 2332 provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

"It is well-settled law in California that the holder of an escrow is agent for all parties up to the time that the escrow is closed. [Citations.]" (*Early v. Owens, supra,* 109 Cal.App. at p. 494; cf. *Steiner v. Rowley* (1950) 35 Cal.2d 713, 718 [221 P.2d 9].) Because an escrow agent in a real property conveyance is a dual agent for both the purchaser and the seller, any escrow agency is of a limited and special nature, and the obligations imposed on an escrow agent to disclose matters to his or her principals are more limited than those imposed on an agent pursuant to a general agency. For this reason, in order for any knowledge acquired by an escrow agent to be imputed to either principal, such knowledge must have been acquired by the escrow agent within the course and scope of his or her limited agency. Nevertheless, insofar as the escrow agent—acting within the course and scope of his or her agency duties—acquires specific material information pertinent to matters within the same escrow that could have a substantial adverse effect on the principal, such knowledge will be imputed to the principal. (*Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 533-535 ["The scope of the imputation of knowledge is directly related to the scope of the duty arising from the agency agreement; it has nothing to do with whether the agent actually has the information in question or has it only constructively."]; *Early v. Owens, supra,* 109 Cal.App. at p. 494; 5 Miller & Starr, Cal. Real Estate, *supra,* Recording and Priorities, §§ 11:70, 11:74 to 11:75, pp. 177-180, 188-194; 3 Miller & Starr, Cal. Real Estate, *supra,* Escrows, §§ 6:23, 6:26, pp. 52-56, 65-72.)[10]

---

[10]"As a general rule, knowledge acquired by an agent within the course and scope of agency duties is imputed to the principal. Imputation is based on the theory that the agent will disclose to the principal that which it is obligated to disclose.

". . . An escrow agent is employed by the parties to perform the concurrent conditions of the sales or loan transaction. The parties submit escrow instructions to the agent, and generally the agent's duties are limited to the performance of the instructions. Prior to the performance of the concurrent conditions of the escrow, the escrow agent is the agent of both parties. . . .

". . . When the escrow agent is the dual agent for both parties, the knowledge of the escrow agent regarding matters within the same escrow is imputed to both parties to the escrow. When an escrow agent receives a notice of revocation or termination by one party, its knowledge is imputed to the other party because this fact is within the agent's duty of disclosure to the principal. Similarly, when one party to the escrow changes the contents of the instructions, the escrow agent's knowledge of the change is imputed to the principal. [¶] . . . [¶]

"The escrow agent is only a limited or special agent, and its obligations to disclose matters to its principal are also limited. . . . [¶] . . . Based on this principle, knowledge acquired by the escrow agent beyond the scope of its limited agency is not imputed to either principal.

"The test in each case is whether the agent acquired the knowledge within the course and scope of the limited agency, and whether the knowledge was of a type that a dual agent is obligated as a fiduciary to disclose to a principal. Thus, whatever duty the escrow agent may have is limited to knowledge acquired in the escrow in which both principals are parties. *Knowledge of documents or events within an escrow is imputed because each party has a right*

The question, then, is whether Holcomb's actual knowledge of Cloney's full name was acquired within the course and scope of her escrow agency. We conclude that it was. Holcomb asked for Cloney's identification, not simply as a notary public, but as the escrow officer acting on behalf of both parties. Before Cloney signed the grant deed conveying the Property to respondent, it was necessary to ascertain that he was, in fact, the person he represented himself to be. This information was necessary to Holcomb for her to carry out her duties as escrow agent to respondent. Although she testified she believed Cloney's identification was "confidential" and she could not reveal it to anyone, her belief was clearly incorrect. Under the law, Holcomb was required to supply this information to *any member of the general public* upon simple written request and payment of "not more than thirty cents" per photocopied page. (Gov. Code, § 8206, subd. (c).) Moreover, Holcomb acquired knowledge of Cloney's true full name in the process of fulfilling her escrow duties of supervising the execution of the conveyance documents and disbursement of purchase moneys. Because this information was obtained in the course of her escrow agency and was highly material to the subject matter of that agency, Holcomb was *obliged* by her agency to disclose this information to respondent as one of her principals. As a matter of law, therefore, she is presumed to have fulfilled this duty of her agency. The highly material knowledge of Cloney's identity must therefore be imputed to respondent. (*Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 534-536; 3 Miller & Starr, Cal. Real Estate, *supra,* Escrows, §§ 6:23, 6:26, pp. 52-56, 65-72.)

A party to a real estate conveyance is not entitled to ignore any information pertinent to title that comes to him or her, even from outside the

---

to see all documents and instructions in the escrow." (3 Miller & Starr, Cal. Real Estate, *supra,* Escrows, § 6:23, pp. 52-54, fns. omitted, italics added; see also *Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at p. 534.)

". . . Under the general rules of agency, the agent has a duty to disclose to a principal all matters that are material to the principal or that may affect the principal's decision. Because of this duty, the knowledge of the agent within the course and scope of agency duties usually is imputed to the principal.

". . . In the case of an escrow agent, these agency principles are limited because the escrow agent is a dual agent for both parties, and is only a special agent with those obligations prescribed by the instructions given to it by the principals. . . . [¶] . . . [¶]

". . . As a special agent, the escrow agent's duty of disclosure is limited to those functions being performed by the agent. *Within the course and scope of these prescribed duties, the agent has a duty to disclose material matters that would have a substantial adverse effect on the principal where it knows that the principal is looking to the agent for protection as to those very facts.* For example, it may be within the scope of the agent's duties, and the agent may have a duty to disclose: a notice of assignment that is shown in a title report received by the escrow agent, a judgment lien listed in a preliminary report that is not described in the title policy, a true loan value that is crucial to a principal's decision to complete an exchange, and the fact that a senior lien is not a construction loan." (3 Miller & Starr, Cal. Real Estate, *supra,* Escrows, § 6:26, pp. 65-66, fns. omitted, italics added.)

recorded chain of title, to the extent such information puts him or her on reasonable inquiry notice of information that may bring into question the state of title. (*Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at p. 531; *First Fidelity Thrift & Loan Assn. v. Alliance Bank, supra,* 60 Cal.App.4th at pp. 1443-1445.) At the very least, imputed knowledge of the fact the seller of the Property was actually named James Michael Cloney placed respondent on reasonable inquiry notice of possible clouds to his title to the Property recorded under this name. Under these circumstances, since appellant's dissolution judgment had been properly recorded, the applicable statutes impose *constructive* knowledge of the existence of the judgment lien on respondent. (Code Civ. Proc., §§ 697.320, subd. (a)(1), 697.390, subd. (b); Civ. Code, §§ 19, 1213-1214; Gov. Code, § 27282, subds. (a)(1), (b); *Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 534-536; *Hochstein v. Romero, supra,* 219 Cal.App.3d at pp. 451-452; *Early v. Owens, supra,* 109 Cal.App. at pp. 494-496; 5 Miller & Starr, Cal. Real Estate, *supra,* Recording and Priorities, §§ 11:51, 11:59, pp. 137-138, 149-151.)

Respondent argues that Holcomb's acquisition of knowledge of the discrepancy in Cloney's name is irrelevant, because she had no actual, personal knowledge of appellant's judgment lien, and did not mention the discrepancy to First American's title department. Thus, respondent urges, Holcomb's discovery of Cloney's alternative names was merely "incidental" to her escrow duties. Respondent's argument completely misses the point. The issue is not whether Holcomb actually knew about appellant's recorded judgment lien against Cloney, or whether it was her duty to search the state of Cloney's title. The pertinent question instead is whether Holcomb's actual, undisputed knowledge of Cloney's true full name was acquired in the course and scope of her escrow agency, and therefore may be imputed to respondent. If so, that imputed knowledge by itself is enough to place respondent on constructive notice of the state of Cloney's title. (Code Civ. Proc., §§ 697.320, subd. (a)(1), 697.390, subd. (b); Civ. Code, §§ 1213-1214; Gov. Code, § 27282, subds. (a)(1), (b); *Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 534-536; *Hochstein v. Romero, supra,* 219 Cal.App.3d at pp. 451-452.)

Respondent next argues that Holcomb's actual, undisputed knowledge about Cloney's full name was not acquired within the course and scope of her escrow agency, and therefore cannot be imputed to respondent. Conceding the rule that an agent's knowledge acquired within the course and scope of the agency is imputed to the principal, respondent nevertheless contends the rule is "inapposite to the facts presented herein" because of the limitations on the scope of an escrow officer's agency relationship with the parties to the escrow. Specifically, respondent insists Holcomb's knowledge of Cloney's actual identity, which she learned at the point she asked him for

identification, "was acquired strictly in her capacity as a notary public." Because of the asserted "coincidence" that Holcomb "also happens to be a notary public" in addition to being the parties' escrow agent, and the testimony to the effect she received her notary's license independently of First American and was not separately paid by her employer for performing notary duties, respondent claims the information about Cloney's name "had no connection to her duties under the escrow instructions," did not have to be disclosed at all, and cannot be imputed to respondent.

Under the record presented, we must reject this line of reasoning. Holcomb's request that Cloney produce identification was made in the context of his one and only meeting with her as escrow agent, and was a necessary part of his execution of the documents in escrow transferring and conveying the Property to respondent. The necessity of identifying Cloney as the true owner and seller of the Property was part and parcel of the escrow itself. The fact Holcomb coincidentally happened to be a notary public as well as the parties' escrow agent, and therefore served in both capacities on this occasion, is essentially irrelevant. It was in her capacity as escrow agent, and within the course and scope of the duties of that agency, that she needed to ascertain the identity of the individual presenting himself to her as the seller. To put it another way, if Holcomb had *not* been a notary public, she would simply have obtained some other individual in possession of that license to notarize Cloney's signature. As escrow agent, she would still have needed to confirm that Cloney was in fact the seller. Indeed, it would have been a violation of Holcomb's duties as escrow agent to have disbursed respondent's purchase money to Cloney without first taking care to ascertain his identity. (3 Miller & Starr, Cal. Real Estate, *supra*, Escrows, § 6:25, pp. 57-65.)

The fact that Cloney's actual full name was *different* from that appearing on the deed and other ownership documents appertaining to the Property was clearly important information highly material to the escrow. Because Holcomb acquired this knowledge in the context of the escrow itself and in the performance of her duties as escrow agent, respondent had a right to this information, and she had a duty to give it to him. Knowledge of this material information must therefore be imputed to respondent as a matter of law. (3 Miller & Starr, Cal. Real Estate, *supra*, Escrows, §§ 6:23, 6:25 to 6:26, pp. 52-56, 65-72; 5 Miller & Starr, Cal. Real Estate, *supra*, Recording and Priorities, §§ 11:51, 11:70, 11:74, pp. 137-138, 177-180, 188-189.) In short, the record shows that knowledge of Cloney's actual full name and identity was material to the subject matter of Holcomb's escrow agency, and she acquired this knowledge while acting in the course and scope of her duties as escrow agent for respondent. Because as escrow agent she had a legal duty to disclose this information to her principal and will be presumed to have

fulfilled this duty, the knowledge of Cloney's actual full name must be imputed to respondent. (*Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 534-535; 5 Miller & Starr, Cal. Real Estate, *supra,* Recording and Priorities, §§ 11:49 to 11:51, 11:58 to 11:59, pp. 129-138, 147-151; 3 Miller & Starr, Cal. Real Estate, *supra,* Escrows, §§ 6:23, 6:25 to 6:26, pp. 52-56, 57-72.)

Thus, we hold that an undisputedly valid judgment lien recorded against a judgment debtor under one name does impart constructive notice of the lien to a subsequent purchaser to whom the same judgment debtor sells real property under a different name, where while acting within the course and scope of his or her agency the purchaser's escrow agent gains actual knowledge of *both* of the names used by the seller. Knowledge of the critical fact that James Michael Cloney and Mike Cloney were one and the same person—learned prior to the close of escrow by Holcomb in her capacity as respondent's escrow agent and in the course and scope of her duties—is imputed to respondent. Respondent therefore had constructive notice of appellant's recorded judgment against James Michael Cloney. (Code Civ. Proc., §§ 697.320, subd. (a)(1), 697.390, subd. (b); Civ. Code, §§ 19, 1213-1214, 2332; Gov. Code, § 27282, subds. (a)(1), (b); *Triple A Management Co. v. Frisone, supra,* 69 Cal.App.4th at pp. 530-531, 534-536; *First Fidelity Thrift & Loan Assn. v. Alliance Bank, supra,* 60 Cal.App.4th at pp. 1443-1445; *Hochstein v. Romero, supra,* 219 Cal.App.3d at pp. 451-452; *Early v. Owens, supra,* 109 Cal.App. at pp. 494-496.)

Because the trial court erred as a matter of law in failing to impute to respondent the knowledge of Cloney's full name acquired by respondent's escrow agent, we must reverse the trial court's order quashing appellant's levy on the Property and denying her application for an order of sale.

### DISPOSITION

The order quashing appellant's levy on the Property and denying her application for an order of sale is reversed. Appellant is awarded her costs on appeal.

Corrigan, J., and Parrilli, J., concurred.