Filed 8/21/20  The Little Cottage Caregivers v. Meiri CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE LITTLE COTTAGE CAREGIVERS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADIE MEIRI,<br><br>Defendant, Cross-complainant and Respondent;<br><br>TZEHOU KUNG,<br><br>Cross-defendant and Appellant. | B294533<br><br>(Los Angeles County Super. Ct. No. SC126909) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Reversed with directions.

Horvitz & Levy, Curt Cutting, Allison W. Meredith and Rebecca G. Powell; Katchko Vitiello & Karikomi, Giandominic Vitiello, Tatyana Brenner and Edward E. Angwin for Cross-defendant and Appellant.

Law Offices of JT Fox & Associates and J.T. Fox for Plaintiff and Respondent and Defendant, Cross-complainant and Respondent.

─────────────────────────────

In 2010, Vietnam Nguyen (Nguyen) sold a 50 percent interest in The Little Cottage Caregivers, LLC, a California limited liability company (Caregivers), to respondent Adie Meiri (Meiri). The following year, Nguyen signed a second agreement giving Meiri an option to buy an additional 35 percent interest in Caregivers for $1,000.

In 2012, while the option period remained open, Nguyen sold a 50 percent interest in Caregivers to Yun Kang (Kang), appellant Tzehou Kung's (Kung) predecessor in interest. Thereafter, Meiri purported to exercise his option. This litigation followed.

The case was tried to the court, which concluded that Meiri owned an 85 percent interest in Caregivers because he entered into the 2010 purchase agreement and the 2011 option agreement before Kang purported to purchase his competing 50 percent interest in the company. Kung challenges this finding on appeal: Although he concedes that Meiri validly acquired his initial 50 percent interest, Kung urges that Meiri's purported subsequent acquisition of an additional 35 percent interest was invalid because Kang did not have actual or constructive knowledge of the option agreement. We conclude that Kung is correct, and thus we reverse the judgment with directions.

2

# FACTUAL AND PROCEDURAL BACKGROUND

## I.

### Background[1]

A.    *Meiri's Acquisition of an Interest in Caregivers*

Caregivers is a medical marijuana collective that has operated in Los Angeles since at least 2006. Prior to the events at issue, Nguyen was Caregivers's sole owner.

At some point in 2010, Meiri's father, Shlomo Meiri (Shlomo), decided to give 19-year-old Meiri a gift in the form of a business. Shlomo met Nguyen through a third party and, in September 2010, he purchased a 50 percent interest in Caregivers in Meiri's name.

After the transaction closed, Nguyen "approached [Shlomo] in tears" and asked to repurchase the 50 percent interest in Caregivers. Shlomo agreed and retained an attorney to draft a repurchase agreement. As relevant here, the repurchase agreement provided as follows:

(1)    Nguyen would have the right to repurchase his 50 percent interest in Caregivers upon certain terms and conditions—namely, an immediate cash payment of $110,000, a subsequent cash payment of $60,000, and the assignment to Meiri of a $230,000 debt.[2]

---

[1]    The record does not contain a complete reporter's transcript of the bench trial; thus, references to trial testimony are to the settled statement certified by the court.

[2]    The drafting attorney testified that he intentionally made the repurchase agreement ambiguous as to whether Nguyen would recover the 50 percent share immediately or after the satisfaction of the specified conditions. For purposes of this

(2)     Contemporaneously with the repurchase agreement, the parties would execute an option agreement "under which [Meiri] shall, for $10.00, . . . acquire [the option to purchase a] thirty-five [percent] (35%) additional interest in the Company in the case of [Nguyen's] nonperformance of" his obligations under the repurchase agreement.  The option agreement provided that Meiri could exercise the option during its two-year term by giving written notice to Caregivers's manager or to Nguyen, accompanied by a check for $1,000.  The option agreement further provided that Nguyen "may not assign any of its rights or duties under this Agreement without the express written consent by [Meiri]."

Nguyen and Meiri executed the repurchase agreement and the option agreement on January 24, 2011.  There is no evidence that either agreement was ever recorded.  It is undisputed that Nguyen did not comply with all of his obligations under the repurchase agreement, and thus he never reacquired the 50 percent interest in Caregivers from Meiri.

B.     *Kang's Acquisition of an Interest in Caregivers*

In March 2012, Caregivers was unable to pay its rent and was facing an unlawful detainer action.  That month, Nguyen entered into an agreement with Kang (the investment agreement), in which Kang agreed, in exchange for a 50 percent interest in Caregivers, to pay Caregivers's past due rent and other expenses.

The investment agreement recited that Nguyen "and his partner" were unable to make a rent payment on time, and their

---

appeal, Kung does not contest that Meiri retained his initial 50 percent share of Caregivers, and thus we need not address the ambiguity.

4

landlord had initiated an unlawful detainer action against Nguyen. Kang was willing to invest in Caregivers by paying Nguyen's landlord the accrued but unpaid rent. In exchange, "Nguyen shall give and Kang shall acquire one-half ownership interest in [Caregivers]." From the date of the agreement, Kang would have the right to operate and manage Caregivers, but Nguyen would continue to work on licensing matters in consultation with Kang.

The investment agreement provided that Nguyen would obtain the consent of a person named "Dick Van Vu," who either had relinquished, or would relinquish, "any and all rights in" Caregivers to Kang. Nguyen "represents and warrants that there are no other person [*sic*] who has any interest, ownership or otherwise, in [Caregivers] other than Nguyen himself."

Kang testified that he did not question Nguyen about Dick Van Vu, and he did not ask whether there were any other members of Caregivers. It is undisputed that at the time Kang executed the investment agreement, he had never heard of Meiri, and he was not aware of any competing interests in Caregivers or any outstanding options to purchase an interest in Caregivers. He learned of Meiri's claimed interest in Caregivers for the first time in 2016.

C.     *Meiri's Purported Exercise of the Option*

Shlomo determined Nguyen was in breach of the repurchase agreement. On July 30, 2012, at Shlomo's direction, Meiri executed an "Option Exercise Notice" (option notice) that purported to exercise Meiri's option to purchase an additional 35 percent interest in Caregivers.

Shlomo testified that although Meiri executed the option notice in July 2012, he did not deliver it to Nguyen at that time.

Shlomo ultimately delivered the option notice and $1,000 in cash to Nguyen sometime in late 2012. Shlomo testified that Nguyen accepted the $1,000 and signed the assignment certificate. However, at trial neither Shlomo nor Meiri produced a copy of the signed assignment certificate, testifying that it had been "lost."

Despite Meiri's purported 85 percent interest in Caregivers, neither Meiri nor his father ever visited Caregivers's premises after their single visit there in 2010, at the time of the original investment. Neither Meiri nor his father ever performed any work on Caregivers's behalf, and neither ever received a paycheck, disbursement, or any other funds from Caregivers.

### D. Kang's purported acquisition of an additional 50 percent interest in Caregivers from Nguyen.

More than a year after Meiri's purported exercise of the option, Kang lent Nguyen $115,000, evidenced by a promissory note dated October 5, 2013. The note provided that, in the event Nguyen failed to repay the loan, Kang would become the full owner of Caregivers. Nguyen failed to repay the loan, and Kang exercised his rights under the note to replace Nguyen as 100 percent owner.

### E. Kung's acquisition of an interest in Caregivers.

In July 2014, Kang sold his interest in Caregivers to a man named Don Yoo (Yoo). After the sale, Kang remained as manager of Caregivers.

In June 2016, Yoo sold his interest in Caregivers to Kung. Kung made significant improvement to Caregivers's premises at his own expense.

Kung first learned of Meiri's claimed interest in Caregivers after Meiri filed a Statement of Information with the California

6

Secretary of State in 2016, which listed Meiri as the chief executive officer and sole manager of Caregivers.

## II.

## The Present Action

### A. Operative Pleadings

On January 10, 2017, Caregivers, through Kung, filed a complaint against Meiri for declaratory relief. The operative first amended complaint alleged that Kung was the managing member of Caregivers, and that an actual controversy existed between Caregivers and Meiri with respect to the ownership and control of Caregivers.

Meiri filed a cross-complaint against Kung for declaratory relief. Meiri pled that he owned an 85 percent interest in Caregivers and was entitled to be the company's managing member.[3]

### B. Trial and Statement of Decision

The matter was tried to the court on the parties' respective claims for declaratory relief.

On May 14, 2018, the court signed a statement of decision, which found that Meiri was an 85 percent owner of Caregivers. The court explained: "The evidence support[ed] the conclusion that [Meiri] was a bona fide purchaser for value and [Kung] was not. [Meiri] acquired his interest prior to [Kang]. [Kang] entered [into] his March 23, 2012 agreement with [Nguyen] during [a] time that [Meiri's] Option remained open, for a period of two years beginning January 24, 2011, during which time there was a restriction on [Nguyen's] right to [transfer any] interests.

---

[3] The complaint and cross-complaint contained various other causes of action, but the parties dismissed those claims prior to entry of the final judgment.

7

[Nguyen] breached [the repurchase agreement], [and] therefore [Meiri] retained his 50% interest, and by exercise of an Option, [Meiri] increased his membership interests by 35%, to a total of 85% of the membership interests in [Caregivers]." (Record citations omitted.)

On August 15, 2018, the trial court entered a judgment declaring Meiri the owner of an 85 percent interest in Caregivers and the company's managing member. Kung timely appealed.

## CONTENTIONS

For purposes of this appeal, the parties agree that Kung's interest in Caregivers is derivative of Kang's, and thus that Kung could not have acquired a greater interest in Caregivers than Kang had. The parties also agree that Meiri acquired a 50 percent interest in Caregivers in 2010, and thus that the only question before the court is who owns the remaining 50 percent.

As to that issue, Kung contends that because Kang did not have actual or constructive knowledge of Meiri's rights under the option agreement, Kang was a bona fide purchaser for value. Kung therefore urges that Kang's 2012 purchase of a 50 percent interest in Caregivers was not subject to Meiri's unexercised option. Meiri contends, in contrast, that he had the right to purchase an additional 35 interest in Caregivers by virtue of the 2011 option agreement. He urges that his option was a "fully valid and enforceable interest[] in property," and therefore Kang's interest in Caregivers (and thus Kung's) cannot exceed 15 percent.

As we discuss, although Meiri's option to purchase an additional 35 percent interest in Caregivers preceded Kang's and Nguyen's 2012 execution of the investment agreement, the option was enforceable against Kang *only* if Kang had actual or

8

constructive knowledge of the option.  The record before the trial court establishes that Kang did not:  The undisputed evidence was that Kang did not have actual knowledge of Meiri's purported interest in Caregivers, and the facts known to Kang in 2012 would not have prompted a reasonable person to inquire as to whether any other person owned, or had the right to acquire, an interest in Caregivers.  Accordingly, Kung is entitled to a 50 percent interest in Caregivers as a matter of law.

## DISCUSSION

### I.

### Legal Principles

It is black-letter law that a bona fide purchaser for value[4] who acquires his or her interest in property without knowledge or notice of another's prior rights or interest in the property "takes the property free of such unknown interests."  (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 437 (*Cloney*); accord, *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 (*Melendrez*).)  Conversely, "it is an equally well-established principle of law that any purchaser of . . . property acquires the property subject to prior interests of which he or she has actual *or constructive* notice."  (*Cloney*, *supra*, at p. 437.)

This principle applies equally to an option to purchase property.  "[A]n option to purchase . . . is valid against a subsequent purchaser *who takes with notice of the option*." (*Claremont Terrace Homeowners' Assn. v. United States* (1983) 146 Cal.App.3d 398, 408, italics added (*Claremont Terrace*); accord, *Utley v. Smith* (1955) 134 Cal.App.2d 448, 450 (*Utley*).) An option to purchase is *invalid*, however, against a bona fide

---

[4]     It is undisputed that Kang paid value for his interest in Caregivers.

9

purchaser for value—i.e., a subsequent purchaser who lacks actual or constructive knowledge of the option.  (*Utley*, *supra*, at pp. 449–451.)

"Actual notice is 'express information of a fact,' while constructive notice is that 'which is imputed by law.'  [(Civ. Code, § 18.)]  A person with 'actual notice of circumstances sufficient to put a prudent man upon inquiry' is deemed to have constructive notice of all facts that a reasonable inquiry would disclose. (Civ. Code, § 19; see *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 439; 1 Schwing, Cal. Affirmative Defenses [(2007) Statute of Limitations,] § 25:4, pp. 1340–1341 at fn. 28.)"  (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1318–1319 (*E-Fab*).)

A bona fide purchaser may seek a legal determination that the title he obtained remains free and clear of any adverse interest in the property.  (*Reiner v. Danial* (1989) 211 Cal.App.3d 682, 690.)  As a general rule, the person claiming bona fide purchaser status bears the burden to present evidence that he acquired interest in the property without notice of a prior interest.  (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 366, fn. 6; *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1442.)

Whether a buyer is a bona fide purchaser is ordinarily a question of fact.  (*Melendrez*, *supra*, 127 Cal.App.4th at p. 1254; *Triple A Management Co., Inc. v. Frisone* (1999) 69 Cal.App.4th 520, 536 (*Triple A*).)  We thus may reverse the trial court's determination that Kang (and therefore Kung) was not a bona fide purchaser only if that determination is unsupported by substantial evidence.  (*Melendrez*, at p. 1254; *Triple A*, at p. 536.)

10

## II.
## The Trial Court's Finding that Kang Was
## Not a Bona Fide Purchaser is Unsupported
## by Substantial Evidence

As we have said, a person is a bona fide purchaser only if, at the time he purchased an interest in property, he lacked actual or constructive knowledge of a competing claim to the property. (*Cloney*, *supra*, 91 Cal.App.4th at p. 437.) Thus, in order for the trial court to conclude that Kang (and therefore Kung) was not a bona fide purchaser, the court had to have found that Kang had actual or constructive knowledge of Meiri's unexercised option to purchase an additional 35 percent interest in Caregivers. As we discuss, that implied finding was not supported by substantial evidence.[5]

Kang testified that he first became aware of Meiri's claimed interest in Caregivers after Meiri filed a Statement of Information in 2016 with the California Secretary of State. Prior to that time, Kang said he did not know who Meiri was, and he was not aware of any competing interests, including any outstanding options, in Caregivers. Meiri did not present any evidence to the contrary—that is, neither Meiri nor any of his witnesses testified that, prior to 2016, Meiri had any contact with Kang or took any affirmative steps to make Kang aware of his existence. The undisputed evidence thus compels the conclusion that when Kang entered into the investment agreement in 2012,

---

[5] Following a bench trial, the doctrine of implied findings requires a reviewing court to infer that the trial court impliedly made every factual finding necessary to support its decision. (*Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 48.)

11

he did so without actual knowledge of Meiri's claimed interest or his option to purchase an additional interest in Caregivers.

The undisputed evidence also compels the conclusion that Kang entered into the investment agreement without *constructive* knowledge of Meiri's claimed interest. As we have said, a person with " 'actual notice of circumstances sufficient to put a prudent man upon inquiry' is deemed to have constructive notice of all facts that a reasonable inquiry would disclose." (*E-Fab, supra*, 153 Cal.App.4th at p. 1319.) The question before us, therefore, is whether there is substantial evidence in the record that Kang was on inquiry notice of Meiri's unexercised option before he entered into the investment agreement in 2012 and, if so, whether a reasonable investigation would have revealed Meiri's claim.

It is undisputed that Meiri never performed any work for Caregivers or visited the company's business premises after he purchased an interest in the company in 2010. It also is undisputed that Meiri never received a paycheck, disbursement, or any other funds from Caregivers. And, it is undisputed that Meiri never opened a bank account in Caregivers's name, had not communicated with any of Caregivers's vendors or employees, had not signed a lease on Caregivers's behalf, and did not file a Statement of Information in connection with Caregivers prior to August 2016. In short, there is no evidence that Kang could have learned of Meiri's interest in or claim to Caregivers by visiting Caregivers's premises or reviewing its financial or other records.

Notwithstanding these undisputed facts, Meiri contends Kang was on inquiry notice of Meiri's claim because the investment agreement Kang entered into with Nguyen in 2012 stated that Nguyen "and his partner" were unable to make rent

payments, and Nguyen would provide documentation that an individual named "Dick Van Vu" had or would relinquish "any and all right in the Business to Kang." Meiri asserts that this disclosure gave Kang notice of facts giving rise to a duty to investigate, and Kang "therefore [was] on inquiry notice, and not a bona fide purchaser."

We do not agree that the disclosure that "Dick Van Vu" had an interest in Caregivers, which according to the investment agreement he was willing to relinquish, put Kang on inquiry notice that anyone other than Vu had an interest in Caregivers—particularly in light of Nguyen's express representation in the investment agreement that "there are no other person [*sic*] who has any interest, ownership or otherwise, in the Business other than Nguyen himself." But even were the disclosure sufficient to put Nguyen on inquiry notice, he could be charged with constructive notice of Meiri's unexercised option only if a reasonable investigation would have revealed that fact. (*E-Fab, supra*, 153 Cal.App.4th at pp. 1318–1319.) Here, there is absolutely no evidence that, even had Kang investigated, he would have discovered Meiri's unexercised option to purchase an additional 35 percent interest in Caregivers. There is no evidence that either the repurchase agreement or the option agreement was ever recorded, and thus a search of public records would not have revealed their existence. There is also no evidence that anyone other than Nguyen, Meiri, Shlomo, and Shlomo's attorney had actual knowledge of either agreement; and Kang knew only Nguyen, who had specifically disavowed that any other individual had an interest in the company. There thus is no evidence that a diligent inquiry by Kang with respect to

13

Dick Van Vu would have revealed that Meiri held an unrecorded option to purchase another 35 percent of Caregivers.

Given all these circumstances, we conclude there is no substantial evidence that when Kang entered into the investment agreement with Nguyen in 2012, he had actual or constructive knowledge of Meiri's option. As a matter of law, therefore, Kang purchased a 50 percent interest in Caregivers free and clear of Meiri's option.[6]

## III.

### Meiri's Contrary Claims are Without Merit

Notwithstanding the foregoing, Meiri contends that Nguyen could not have validly transferred an interest in Caregivers because the option agreement prohibited Nguyen from "assign[ing] any of its right or duties under this Agreement without the express written consent [of] [Meiri]." Meiri thus contends the option agreement "precluded Nguyen from making any transfer of [Caregivers]" during the two-year period the option remained open, and the investment agreement "thus constituted an improper, void, and non-existent transfer of interest in [Caregivers]."

Meiri's contention lacks merit. As we have said, a bona fide purchaser who acquires an interest in property without notice of another's asserted rights in the property takes the property free of such unknown rights. (*Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th 513, 521.) Therefore, a violation by Nguyen of the nonassignment clause in the option agreement

---

[6]     Having so concluded, we need not reach Kung's alternative contention that, at a minimum, the trial court should have concluded that Kung holds a 15 percent interest in Caregivers.

could have no bearing on whether Kang was a bona fide purchaser.

## DISPOSITION

The judgment is reversed with directions to the trial court to enter a new and different judgment that declares Kung a 50 percent owner of Caregivers, and is otherwise consistent with the views expressed herein.  Kung is awarded his appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

DHANIDINA, J.

15