Filed 11/7/14  Indulkar v. Sanchez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANIL INDULKAR et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>THERESA SANCHEZ et al.,<br><br>Defendants and Respondents. | D066209<br><br><br><br>(Super. Ct. No. CIVSS 707988) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John P. Vander Feer, Judge.  Affirmed.

Law Offices of Lawrence R. Bynum and Lawrence R. Bynum for Plaintiffs and Appellants Anil Indulkar and Gouri Indulkar.

Anderson, McPharlin & Conners, Mark E. Aronson, Masayo Allen for Defendants and Respondents Theresa Sanchez and Surety Bonding Company of America.

Fidelity National Law Group, Jacky P. Wang for Defendant and Respondent Fidelity National Title Insurance Company.

Solomon, Grindle, Silverman & Wintringer and Thomas L. Grindle for Defendant and Respondent Marcus & Millichap Real Estate Investment Services, Inc.

Plaintiffs and appellants Anil Indulkar and Gouri Indulkar sued defendants and respondents Theresa Sanchez, Marcus & Millichap Real Estate Investment Services, Inc. (Marcus and Millichap), Surety Bonding Company of America (Surety), and Fidelity National Title Insurance Company (Fidelity) for negligence, negligence per se, and willful violation of Government Code section 8214, alleging in part that Sanchez notarized a fraudulent quitclaim deed transferring the Indulkars' interest in certain property to former business partners.  Following a bifurcated bench trial, the trial court ruled the Code of Civil Procedure[1] section 338 statute of limitations barred plaintiffs' action.  Plaintiffs appeal, contending they timely commenced the action within one year after their discovery of Sanchez's improper notarial act under section 338.  So as to avoid the doctrine of implied findings, they also challenge the trial court's statement of decision on grounds, among others, it ignored their requests for certain factual findings.  We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

As we explain below (part II, *post*), plaintiffs have not demonstrated deficiencies in the trial court's statement of decision.  Accordingly, "[w]e view the facts most favorable to the judgment under the principle requiring us to presume the lower court's judgment is correct, and draw all inferences and presumptions necessary to support it.

---

[1]    Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

[Citations.] ' "Where [a trial court's] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535.)  If plaintiffs do not challenge the evidence supporting the court's factual findings, we are bound by them and do not review the evidence.  In that event, "we accept the facts set forth in the statement of decision, and determine whether those factual findings support the judgment as a matter of law."  (*Rael v. Davis* (2008) 166 Cal.App.4th 1608, 1617.)  We take other background facts from the trial testimony, and also view it in the light most favorable to the judgment.

In the late 1970s and 1980s, plaintiffs were involved in real estate investments, buying and reselling single family homes using escrow companies.  In the late 1980s, plaintiffs became friends with Vinod and Veena Kaura.  In 1990, plaintiffs and the Kauras purchased a multi-unit apartment complex in El Cajon on Lexington Street (the Lexington property).  Though plaintiffs held a 75 percent interest and the Kauras held a 25 percent interest in the Lexington property, they understood they would be equal partners.  Veena Kaura managed the Lexington property.

In December 1996, the Kauras quitclaimed their interest in the Lexington property to Anil Indulkar as his sole and separate property.  Despite the quitclaim deed granting Anil Indulkar 100 percent ownership, both plaintiffs considered that the Kauras retained their 50 percent partnership interest.

3

In 2002, Anil Indulkar suggested that the couples liquidate the Lexington property, and plaintiffs and the Kauras agreed plaintiffs would obtain a buy-out of their interest from the Kauras, who would pay via a loan obtained through refinancing the property. Plaintiffs executed at least one power of attorney in favor of Gouri Indulkar's brother, Jagdish Gaikwad, to assist the Kauras in obtaining a loan, and Gaikwad executed a quitclaim deed as plaintiffs' attorney in fact in April 2002. At some point in 2004, Veena Kaura told plaintiffs she had found a loan and sent them another quitclaim deed for the Lexington property, which one or both plaintiffs signed with a notary in India and returned to her.

On February 12, 2004, Sanchez notarized a quitclaim deed for the Lexington property that did not contain the plaintiffs' signatures. Though her notary stamp was on the deed and she signed it, Sanchez never saw anyone else sign the document. The quitclaim deed was recorded in the San Diego County Recorder's Office as document No. 2004-0132687.

In April 2004, Gouri Indulkar returned to the United States from India and attempted to learn what had happened with the Kauras' efforts to obtain a loan. When Gouri Indulkar could not contact Veena Kaura, at her husband's suggestion she met with attorney Russell DePhillips, who in September 2004 filed a law suit on plaintiffs' behalf against the Kauras and other entities in San Diego County Superior Court including causes of action for imposition of constructive and resulting trust, partition, quiet title, declaratory relief, fraud, avoidance of fraudulent transfers and conversion. In part, the complaint alleged plaintiffs had transferred the Lexington property to the Kauras, and it

4

referenced the February 20, 2004 quitclaim deed recorded as document No. 2004-0132687. That action was settled by the parties and dismissed with prejudice in early 2005.

On October 31, 2007, plaintiffs filed their complaint in the present action against Sanchez, Surety, Fidelity, and Marcus & Millichap, asserting causes of action for negligence, negligence per se and "willful" violation of Government Code section 8214. They filed their operative second amended complaint in October 2009. In part, plaintiffs alleged that at some point in February 2004, a "fraudulent deed" was prepared for the Lexington property with their signatures placed there by Veena Kaura; that Sanchez notarized the deed in the course and scope of her duties with Marcus & Millichap; that Sanchez and/or Marcus & Millichap gave the deed to Fidelity, who caused it to be recorded knowing it was not properly acknowledged; and that plaintiffs were not available to have their signatures properly acknowledged. Plaintiffs alleged the forged deed misspelled Anil Indulkar's name, and "[a] cursory examination would have revealed that fact and a reasonable person would have further investigated the wrongfully spelled name." Plaintiffs further alleged they did not discover the deed until November 2006. Defendants each answered the complaint, asserting the statute of limitations as an affirmative defense.

Per the parties' stipulation, the court bifurcated defendants' statute of limitations defense for a bench trial. At the outset, the court took judicial notice and admitted into evidence the February 20, 2004 quitclaim deed, plaintiffs' September 2004 San Diego Superior Court complaint, and plaintiffs' February 2005 request for dismissal with

5

prejudice of that action. The court also judicially noticed the fact that the plaintiffs' initial complaint in the present action was filed on October 31, 2007.

The court heard testimony from Anil and Gouri Indulkar, Gouri's brother Gaikwad, and Sanchez.[2] Anil Indulkar testified that he discovered the forged deed for the first time in November 2006. Sanchez testified that Veena Kaura asked her to notarize the February 20, 2004 quitclaim deed, which was blank at the time. Sanchez admitted that when she put her notary stamp on the document indicating that both Anil and Gouri Indulkar had appeared before her on February 12, 2004, they were not actually present.

At the close of plaintiffs' case, defendants orally moved for a "nonsuit" under section 581, arguing plaintiffs did not submit evidence to legally or factually overcome their statute of limitations defense. In arguing the matter, plaintiffs' counsel pointed out in part that the San Diego complaint, which did not attach the deed, was not verified and neither plaintiff had signed the complaint. Counsel argued that "no one knew what this deed said" and thus plaintiffs could not be charged with knowledge of what was contained in the instrument. He argued that plaintiffs' discovery of the deed in November 2006 was the triggering event for all of the causes of action.

The trial court ruled the statute of limitations barred the action, and granted nonsuit on that basis. Though the court had instructed defendants to prepare a statement

_____

[2] The main substance of Gaikwad's testimony was that plaintiffs had given him power of attorney to facilitate real estate transactions and he signed a January 9, 2004 quitclaim deed under that power of attorney so that Veena Kaura could facilitate the process of escrow and obtain a loan.

of decision, plaintiffs thereafter filed a separate request for statement of decision, asking the court to prepare findings on 28 "disputed" issues. Defendants objected that the request was moot, unnecessary, and sought resolution of uncontroverted or immaterial issues.

In February 2012, the trial court filed its statement of decision. Plaintiffs objected to it in part on grounds it "almost completely ignores the items for which a statement was specifically requested." The court overruled plaintiffs' objections with the exception of objection No. 9, in response to which the court modified its decision to reflect that "Sanchez notarized a quitclaim deed that did not contain plaintiffs' signatures."

Plaintiffs appeal from the ensuing judgment.

DISCUSSION

I. <em>Standard of Review</em>

The parties dispute the relevant standard of review. Applying the standard of review for a nonsuit (§ 581c, subd. (a)), plaintiffs argue defendants bore the burden of proof as to their statute of limitations defense but called no witnesses, and on appeal for purposes of this analysis, we must accept all of plaintiffs' testimony and indulge all inferences in their favor. Plaintiffs also argue that the relevant facts are undisputed, and thus our review should be de novo.

Defendants contend that plaintiffs bore the burden of proving that they had belatedly discovered their causes of action for purposes of invoking the so-called "discovery rule" that would toll the limitations period. They maintain that while their motion was styled as one for nonsuit, it was actually a motion for judgment (§ 631.8) and

7

that as a result, the substantial evidence standard of review applies, requiring this court to view the evidence in the light most favorable to defendants and draw all inferences in support of the judgment.

As to the appellate standard of review, defendants are correct. A nonsuit motion is available only in a jury trial. (§ 581c [defendant may seek a nonsuit after "the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence *in a trial by jury* . . . ."; italics added]; see *Commonwealth Memorial, Inc. v. Telophase Society of America* (1976) 63 Cal.App.3d 867, 869, fn. 1.) In a court trial, on the other hand, after one party has completed the presentation of evidence, "the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment." (§ 631.8.) On such a motion, "[t]he court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party . . . ." (*Ibid.*)

We are entitled to treat the order granting defendants' motion for nonsuit as a judgment for defendants under section 631.8. (*Commonwealth Memorial, Inc. v. Telophase Society of America*, *supra*, 63 Cal.App.3d at p. 869, fn. 1; e.g., *Ford v. Miller Meat Co.* (1994) 28 Cal.App.4th 1196, 1200.) " 'The standard of review of a judgment and its underlying findings entered pursuant to . . . section 631.8 is the same as a judgment granted after a trial in which evidence was produced by both sides. In other words, the findings supporting such a judgment "are entitled to the same respect on appeal as are any other findings of a trial court, and are not erroneous if supported by substantial evidence." ' [Citation.] 'When the decisive facts are undisputed, however, the

8

reviewing court is confronted with a question of law and is not bound by the findings of the trial court. [Citation.] In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law.' " (*Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1269, quoting *San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.)

## II. *Sufficiency of the Statement of Decision*

Plaintiffs reprint in their opening brief their objections to the trial court's statement of decision, in which plaintiffs asserted the statement of decision (1) was poorly organized in that it did not set forth numbered, succinct findings of fact and (2) ignored their requests for various factual findings. Plaintiffs state they are reasserting the objections on appeal so as to avoid the doctrine of implied findings on this court's substantial evidence review.

" 'Section 634 applies when a statement of decision fails to resolve or is ambiguous as to a controverted issue, and the omission or ambiguity is brought to the court's attention. In such a case, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." . . . However, the trial court is not required to respond point by point to issues posed in a request for a statement of decision. "The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." ' " (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12; see also *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689.) "[I]t is

9

settled that the trial court need not, in a statement [of] decision, 'address all the legal and factual issues raised by the parties.' [Citation.] It 'is required only to set out ultimate findings rather than evidentiary ones.' [Citation.] ' "[U]ltimate fact[ ]" ' is a slippery term, but in general it refers to a core fact, such as an element of a claim or defense, without which the claim or defense must fail. [Citation.] It is distinguished conceptually from 'evidentiary facts' and 'conclusions of law.' " (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559 (*Yield Dynamics*); see also *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.)

"Operation of [the rule precluding inferences in favor of the judgment] is conditioned on (1) an initial request that adequately 'specif[ies]' the 'principal controverted issues' as to which the requesting party seeks a statement of decision [citation]; (2) a failure by the statement to 'resolve' the 'controverted issue' thus specified, or an ambiguity in its resolution [citation]; and (3) a record showing that 'the omission or ambiguity was brought to the attention of the trial court.' " (*Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 558.) "The main purpose of an objection to a proposed statement of decision is not to reargue the merits, but to bring to the court's attention inconsistencies between the court's ruling and the document that is supposed to embody and explain that ruling. In fact, if objections do not present deficiencies to the trial court, 'the appellate court will imply findings to support the judgment.' " (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292, quoting *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

10

Here, plaintiffs' first objection as to the statement of decision's organization neither identifies the principal controverted issues nor does it present deficiencies or inconsistencies in the court's findings of ultimate facts. Plaintiffs assert only that as a result of how the statement of decision is written, it "creates more difficulty for the parties and court." That argument and plaintiffs' objection give us no basis to conclude the statement of decision did not sufficiently address essential ultimate facts and material issues.

Plaintiffs' remaining objection—that the statement of decision ignores their requests for findings of various facts—is presented in a way that would have us revisit anew each objection and request for factual finding. That is, plaintiffs merely repeat their requests and objections asserted below to the trial court; they do not concomitantly explain to this court how each requested factual finding is an ultimate fact versus an evidentiary fact or legal conclusion. (See *Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 559 [trial court is required only to set out ultimate findings rather than evidentiary ones]; 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 378, 384-387, pp. 513-515, 521-526.) Nor do plaintiffs explain how their requested findings pertain or are material to the *essential* or core facts and issues relating to defendants' statute of limitations defense, or their claim of delayed discovery of their causes of action. These failings alone permit us to disregard plaintiffs' challenge to the trial court's statement of decision, as it is their burden to overcome the presumption of correctness on appeal with reasoned argument and legal authority. (*Yield Dynamics*, at pp. 556-557; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) It is not enough to merely reiterate their

11

objections without cogent legal discussion as to why the trial court erred by overruling them.

But plaintiffs' challenge to the statement of decision's adequacy fails on the merits in any event. " 'An exception to the general rule for defining the accrual of a cause of action—indeed, the "most important" one—is the discovery rule. [Citation.] It may be expressed by the Legislature or implied by the courts. [Citation.] It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.' " (*UnRuh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 358, quoting *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397; see also *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action"].) A claim of delayed discovery to postpone a cause of action's accrual requires a showing that the claim would be time barred without the benefit of the discovery rule,[3] the time and manner of plaintiffs' discovery, and the plaintiffs' inability to have made earlier discovery despite reasonable diligence. (See *Fox*, at p. 808; *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160, partially superseded by statute as stated in *Grisham*

---

[3] Plaintiffs concede as much in their opening brief: "The notarial act complained of in this matter occurred on February 12, 2004, when Sanchez notarized the blank (and later forged) signatures of the Indulkars on the deed. This case was filed on October 31, 2007. Thus, it is clear that the action was not filed within three years of the actual notarial act, and would be barred by Civil Code section 338[,] subdivision (f)(1). However, the action was clearly filed within six year [*sic*] of the notarial act, as required by Civil Code section 338[,] subdivision (f)(3). Thus, the issue is whether the action was filed within one year after discovery of the improper notarial act."

*v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637, fn. 8; *Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 175; *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536-1537.)

Concededly, the trial court's statement of decision in this case went well beyond a recital of the ultimate facts pertaining to plaintiffs' claim of delayed discovery. (Cf. *Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 559.) However, the statement of decision nevertheless discloses that the court had decided both the statute of limitations issue and the question of delayed discovery of plaintiffs' causes of action, i.e., whether plaintiffs were unable to discover with reasonable diligence that the February 20, 2004 quitclaim deed was fraudulent or forged, and Sanchez's notarization of it was wrongful, until November 2006, rendering their October 2007 complaint timely. The court specified by Code of Civil Procedure section the limitations periods that applied to plaintiffs' causes of action,[4] found that plaintiffs had retained attorney DePhillips to investigate the case and authorized him to proceed with the lawsuit and that DePhillips, acting on Anil Indulkar's behalf, filed the San Diego Superior Court case on September 10, 2004, which identified the quitclaim deed by its recorder's office document number: 2004-0132687. The court found "[attorney] DePhillips would have had access to or had the very Quitclaim Deed that is the basis of this lawsuit against Defendants in his possession"; that plaintiffs had alleged that " 'anybody looking at the [the Quitclaim Deed] would know it's a fraudulent

---

[4]     In their opening brief setting forth their objections to the statement of decision, plaintiffs suggest the court had ignored their request that it identify the applicable statute of limitations as to the claims against each defendant. Because the trial court did so in its statement of decision, it appears plaintiffs indiscriminately reasserted their objections.

13

document' "; and this knowledge was imputed to attorney DePhillips. In rejecting plaintiffs' delayed discovery claim, the court found in part that attorney DePhillips "had the Quitclaim Deed and should have investigated it further since the misspelled name was obvious" and he was "charged with knowledge that a reasonable investigation would have revealed and that knowledge is imputed to Plaintiffs." It found plaintiffs and/or attorney DePhillips "had the subject Quitclaim Deed in their possession and they need merely have looked at the document and recognized that Plaintiffs' 'purported' signatures were not actually theirs." The court concluded that plaintiffs "had the opportunity to obtain knowledge of facts from sources open to investigation," commencing the statute of limitations. The second condition to successful avoidance of the doctrine of implied findings has not been met because the trial court did not fail to render ultimate findings on the core issues at hand.

Plaintiffs asserted objections to these facts and others in the proposed statement of decision on grounds they were irrelevant, lacked foundation, were legal conclusions, or relied on unproven facts or facts outside of the record. The form of plaintiffs' "objections" to the statement of decision do not call out by specific objection that the trial court had failed to find on core issues relating to defendants' limitations defense and delayed discovery/reasonable diligence, or that it had done so ambiguously, as provided in section 634. Consequently, they did not effectively bring to the court's attention any failure in its statement of decision to have resolved a principal controverted issue, or any ambiguities in that resolution, to avoid application of the doctrine of implied findings under section 634. (*Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 560.) Plaintiffs have

14

therefore not demonstrated the last condition precedent to successful avoidance of the doctrine of implied findings. Even assuming some of plaintiffs' lengthy and argumentative objections raised omissions or ambiguities in the statement of decision, the trial court was not, nor are we, obligated "to sift through a host of improper [objections] in search of the few arguably proper ones." (*Yield Dynamics*, at p. 559.)

Accordingly, in assessing plaintiffs' contentions, we imply findings to support the judgment where appropriate. (*Heaps v. Heaps*, *supra*, 124 Cal.App.4th at p. 292.)

### III. *Timeliness of Plaintiffs' Action Against Sanchez and Surety*

Plaintiffs contend they filed their action against Sanchez and Surety within the limitations period specified in section 338, subdivision (f) for an action against a notary. Section 338, subdivision (f) sets forth a three-year limitations period for "[a]n action against a notary public on his or her bond or in his or her official capacity except that any cause of action based on malfeasance or misfeasance is not deemed to have accrued until discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action." (§ 338, subd. (f)(1).) Subdivision (f)(2) of the statute provides: "Notwithstanding paragraph (1), an action based on malfeasance or misfeasance shall be commenced within one year from discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action or within three years from the performance of the notarial act giving rise to the action, whichever is later." (§ 338, subd. (f)(2).)[5]

---

[5] Subdivision (f)(3) of section 338 provides: "Notwithstanding paragraph (1), an action against a notary public on his or her bond or in his or her official capacity shall be commenced within six years." (§ 338, subd. (f)(3).)

15

As we have pointed out (see footnote 3, *ante*), plaintiffs concede the notarial act occurred on February 12, 2004, when Sanchez notarized the blank deed, and their action filed in October 2007 is barred under the three-year period of section 338, subdivision (f)(1). Thus, plaintiffs agree their claim on appeal hinges on discovery: whether the evidence establishes they filed their action within "one year from discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action . . . ." (§ 338, subd. (f)(2).) Plaintiffs assert the trial evidence is uncontroverted that they did not possess the facts constituting the cause of action against Sanchez because they had no knowledge of the forged deed or Sanchez's false acknowledgement, and they did not discover the forgery until they saw a copy of the recorded deed in November 2006. They argue that though they suspected something was wrong in their relationship with the Kauras in the fall of 2004, they had no direct knowledge of the forged deed and its recordation, and had no duty to inquire further about the other defendants who facilitated the fraudulent conveyance.[6] Plaintiffs focus on *actual* knowledge; they assert there is no evidence they saw the deed, discussed it with their attorney, or reviewed the San Diego complaint, which did not attach the deed, was not verified and did not allege the deed was a forgery.

---

[6] Plaintiffs conclude their argument by asserting, without citation to authority: "Finally, Respondent Fidelity has independent liability based upon its fiduciary relationship to the Indulkars as escrow holder." We treat arguments made without reasoned legal argument or authority as forfeited. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 683; *Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

In making these arguments, the sole legal authority plaintiffs cite is a Witkin treatise, for the proposition that a "forged document does not create constructive notice." That section of Witkin (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 325, p. 381) addresses the effect of proper recordation of an instrument. But plaintiffs omit the following statement from the same section of the treatise: "Proper recordation, by actual copying and correct indexing . . . in the chain of title . . . imparts constructive notice of the contents of the instrument, which is the equivalent of actual knowledge; i.e., knowledge of its contents is conclusively presumed. [Citations.] Normally, the holder of the record title is the owner of the land; a purchaser may rely on the record and purchase from the holder of the record title, and is not protected if he or she buys from another." (12 Witkin, *supra*, § 325, p. 381.) The remainder of the section cited by plaintiffs[7] does not stand for their stated proposition relating to constructive notice; it merely cautions that recordation cannot guarantee *ownership* of property because *title* may be void or voidable due to fraud or forgery that are not deducible from the record, and explains that is why securing title insurance has become almost universal. (*Ibid.*)

Here, the issue for purposes of the statute of limitations and the delayed discovery exception is not title or ownership of the Lexington property, it is whether plaintiffs or

_____

[7] The Witkin treatise goes on to say: "But the record is far from being a guarantee of ownership, for there are a good many elements that make the title void or voidable and that are not deducible from the record. Examples are a grantor's incapacity to contract, fraud in procuring a transfer, forgery, or lack of delivery. . . . Because of these and numerous other uncertainties in the record title, the practice of securing policies of title insurance before purchasing property has become almost universal." (12 Witkin, *supra*, Real Property, § 325, p. 381.)

17

their agent had, or should have had, inquiry notice of their cause of action; that they had reason to suspect that a type of wrongdoing injured them. (*UnRuh-Haxton v. Regents of University of California*, *supra*, 162 Cal.App.4th at p. 359; *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 807.) A plaintiff who suspects a wrongful cause "must conduct a reasonable investigation of all potential causes of that injury." (*Fox*, at pp. 808-809.)[8] In part, the question is directed at the improper notary signature—whether the recorded quitclaim deed imparted notice of the deed's *contents* to plaintiffs or to their agent so as to constitute actual or presumptive knowledge of facts sufficient to put them on inquiry as to Sanchez's wrongdoing and the other defendants' negligence. In a fraud context, courts hold that " ' "where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, *he will be charged with a discovery as of the time the inquiry would have given him knowledge*." ' " (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 130, quoting *Vai v. Bank of America* (1961) 56 Cal.2d 329, 343.) We apply this discovery test with regard to accrual of claims against a notary under section 338, subdivision (f).

Thus, whether the evidence shows plaintiffs had knowledge of their cause of action is not limited to actual knowledge. "By statute, notice may be actual or

---

8    Importantly, plaintiffs need not know the specific facts necessary to establish their cause of action, but within the applicable limitations period they must seek to learn the facts necessary to bring the cause of action in the first place—a plaintiff " ' "cannot wait for" them "to find" him and "sit on" his "rights"; he "must go find" them himself if he can and "file suit" if he does.' " (*Unruh-Haxton v. Regents of University of California*, *supra*, 162 Cal.App.4th at pp. 358-359, quoting *Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at pp. 397-398.)

18

constructive. Actual notice is defined as 'express information of a fact,' while constructive notice is that 'which is imputed by law.' " (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 436, quoting Civ. Code, § 18.) " 'A person generally has "notice" of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact.' " (*Cloney*, at pp. 436-437; Civ. Code, § 19.[9]) " 'Constructive notice is "the equivalent of *actual knowledge*; i.e., knowledge of its contents is conclusively presumed." ' " (*Alfaro v. Community Housing Imp. System & Planning* (2009) 171 Cal.App.4th 1356, 1385.) " 'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact.' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320.)

For example, in *In re Marriage of Cloney*, *supra*, 91 Cal.App.4th 429, a purchaser obtained real property from a seller who held title as "Mike Cloney," but a judgment had been recorded against "James Michael Cloney," creating a lien against all real property he owned in the county. (See § 697.320, subd. (a)(1); *Cloney*, at p. 433.) Because the escrow agent's actual knowledge of Cloney's full name was imputed to the purchaser, by operation of law the purchaser had constructive notice of the judgment lien recorded against the seller, and took title subject to the lien. (*Cloney*, at pp. 439-442.) In *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, plaintiffs were held to have

---

[9]     Civil Code section 19 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

untimely filed suit in June 1983 against their title insurer for slander of title and breach of fiduciary duty. (*Id*. at pp. 1230-1231.) The plaintiffs had alleged the title insurer knowingly created a fictitious easement and knowingly recorded "wild" deeds with the easement in them. (*Id*. at p. 1229.) But one of the plaintiffs had found one of the wild deeds in 1971, and "[o]nce [he] found a wild deed, the circumstances were such that further inquiry became a duty, and the failure to inquire was negligent." (*Id*. at p. 1230.) Additionally, the evidence showed plaintiffs' law firm had discovered the title insurer had authored the wild deeds in February of 1979, which knowledge was imputed to plaintiffs, causing the statute of limitations to run on their breach of fiduciary duty claim four years later in February of 1983. (*Id*. at p. 1231.)

The evidence here shows plaintiffs became concerned and suspected wrongdoing after the Kauras failed to give them the Lexington property proceeds, and after Gouri Indulkar could not contact Veena Kaura, their level of concern grew to such an extent that they consulted counsel. Plaintiffs testified that in April 2004, Gouri returned to the United States and attempted to learn what had happened with the Kauras' efforts to obtain a loan on the Lexington property. As the court found, plaintiffs then retained attorney DePhillips to investigate the matter and authorized him to proceed with a lawsuit against the Kauras. DePhillips filed the September 10, 2004 lawsuit seeking relief for fraud and to avoid a fraudulent transfer, referencing the February 20, 2004 quitclaim deed by document number. The circumstances thus had already put plaintiffs on inquiry notice to find the facts supporting their fraudulent conveyance claim. They likewise justify a finding of principal and agent: Gouri testified she gave attorney DePhillips information

20

that assisted him in filing the complaint. Anil Indulkar testified that DePhillips acted on their behalf in filing the complaint. When asked at trial if DePhillips was her attorney for the San Diego lawsuit, Gouri responded, "Yes."

On this record, the court correctly imputed as a matter of law DePhillips's knowledge of the existence of the February 2004 quitclaim deed to plaintiffs, who were already then under a duty to investigate. (Civ. Code, § 2332; *In re Marriage of Cloney*, *supra*, 91 Cal.App.4th at p. 439; *Stalberg v. Western Title Ins. Co.*, *supra*, 230 Cal.App.3d at p. 1231; *Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 828.) Plaintiffs were deemed to have knowledge of circumstances that DePhillips discovered or could have discovered in the exercise of reasonable diligence. The deed's recordation imparted constructive notice of its contents to DePhillips. (*Alfaro v. Community Housing Imp. System & Planning*, *supra*, 171 Cal.App.4th at p. 1385.) Evidence additionally supports the court's finding that a cursory examination of the deed would have revealed a problem given the obvious misspelling of Anil Indulkar's name: Anil testified at trial when he saw the February 2004 quitclaim deed in November 2006, he knew "at a glance" that the signature on the document was not his and that he never signed it. He gave the deed to his wife Gouri who also confirmed it was not her signature. Other than indirectly challenging these findings of fact and conclusions of law via its objections to the court's statement of decision, plaintiffs do not address these specific findings and conclusions. We conclude they are supported by the evidence.

21

IV. *Plaintiffs' Claims as to the Remaining Defendants*

As to the remaining defendants, plaintiffs repeat their assertions that they did not discover the forged deed until discovery in the present lawsuit commenced and they first saw Anil Indulkar's name was misspelled. They point out the evidence showed they had exchanged several deeds with the Kauras, and thus assumed one of the other deeds was used to fraudulently convey title to the property to the Kauras. They reiterate that the San Diego lawsuit did not mention a forgery, base its claims on a forgery, or seek relief against the notary or escrow company. Plaintiffs refer to three cases involving the discovery rule: *Baker v. Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, *Manguso v. Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, and *McComber v. Wells* (1999) 72 Cal.App.4th 512. They argue based on these cases, "mechanical application of [section 338] as a bar to proceed cannot be applied until there is a conclusion of fact as to when the actual discovery was made" and "a mechanical application of the time limit based on only the San Diego filing date runs counter to the policy and the rule."

We glean nothing from these cases warranting reversal. *Baker v. Beech Aircraft Corp.*, *supra*, 39 Cal.App.3d 315 and *Manguso v. Oceanside Unified School Dist.*, *supra*, 88 Cal.App.3d 725 are merely cited for general propositions concerning the discovery rule.[10] *McComber v. Wells* involved a negligence action against a notary and the

---

[10]    *Baker* acknowledges that " '[w]here, under the circumstances, a prudent man would not be put on inquiry, the mere fact that means of knowledge are open and not availed of does not operate to give constructive notice of the facts.' " (*Baker v. Beech Aircraft Corp.*, *supra*, 39 Cal.App.3d at p. 321.) *Manguso* similarly explains that the statutes of limitation " 'should not be interpreted so as to bar a victim of wrongful conduct

22

question of whether it was time barred under section 338, subdivision (f). (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 521.) The notary had breached her statutory duties by falsely certifying that the plaintiff "personally appeared" before her and signed a trust deed. (*Id*. at p. 519.) The question of the statute of limitations as to the plaintiff's action went to the jury via a special verdict, asking, "Would further inquiry, made with reasonable diligence, have resulted in discovery prior to [one year before plaintiff filed suit] of the negligent acts of the defendant[] . . . Wells[?]" (*Ibid*.) The jury responded "No." (*Ibid*.) On appeal, the defendant argued the action was time-barred as a matter of law and the question of discovery should not have been put before the jury. (*Ibid*.)

Contrary to plaintiffs' suggestion that "actual discovery" is the relevant inquiry for the notary statute of limitations, *McComber v. Wells* acknowledges that section 338, subdivision (f) requires an action against a notary be filed "within one year of when the plaintiff actually discovers *or with reasonable diligence could have discovered* his or her injury." (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 521, italics added.) In

from asserting a cause of action before he could reasonably be expected to discover its existence.' " (*Manguso v. Oceanside Unified School Dist.*, *supra*, 88 Cal.App.3d at p. 731.) Unlike *Baker v. Beech Aircraft Corp.*, *supra*, 39 Cal.App.3d 315, there is no evidence that any defendants' nondisclosures and/or misrepresentations concealed the facts upon which the plaintiffs' cause of action rested, or "lulled [them] into inaction." (*Baker*, at p. 322.) And in *Manguso*, this court reversed the sustaining of a demurrer, holding the complaint showed a teacher's lawsuit against her former principal for placing an allegedly libelous letter in her confidential personnel file did not accrue until she learned of the letter's existence, because the letter was published in " ' "an inherently secretive manner" ' " (*Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 894) and she could not reasonably have been expected to discover the basis for her cause of action before then. (*Manguso*, at pp. 730-731.) This is not the case with the January 2004 deed, which was recorded with the San Diego County Recorder's Office and available for public inspection.

*McComber*, the defendant pointed to evidence that the plaintiff was told by a bank employee she had signed a trust deed more than a year before she filed suit but did not remember it, and also knew that someone was forging her name on other documents. (*Id*. at pp. 521-522.) Defendant argued the facts were undisputed that the plaintiff "knew or should have known 'something relating to the deed of trust was amiss' by the end of 1989, triggering the one-year limitations period." (*Id*. at p. 522.) The appellate court rejected that argument, pointing out there was "substantial contrary evidence" supporting the plaintiff's contention about when she first discovered the fraudulent signature on the notarized deed, and had no reason to suspect it was forged in 1989. (*Ibid*.) Based on that conflicting evidence, the appellate court held the lower court properly denied defendant's mid-trial request for a nonsuit. (*Ibid*.)

*McComber* not only refutes plaintiffs' sole reliance on an "actual notice" standard, but it is inapposite procedurally. That is, in this case involving a nonjury trial and a motion for judgment at the close of plaintiffs' case, the sole question before us is whether substantial evidence supports the trial court's finding that plaintiffs were on inquiry notice of their negligence cause of action against defendants as of September 10, 2004. We have concluded above that the record contains such evidence.

DISPOSITION

The judgment is affirmed.


                                                            O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.